## Fairview Fluor-Spar and Lead Company v. Thomas J. Conkle, Administrator.

1. DAMAGES—*when instruction upon subject of, cannot be complained of.* An instruction upon the question of damages which states the rule less broadly than that justified under the law, cannot be made the subject of complaint.

2. VERDICT—*when not disturbed as against the evidence.* A verdict will not be set aside on review as against the evidence unless it is clearly and manifestly against the weight of the evidence.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Hardin County; the Hon. JACOB R. CREIGHTON, Judge, presiding. Heard in this court at the February term, 1907. Affirmed. Opinion filed September 13, 1907.

LOUDEN & CROW and LEDBETTER & WATSON, for appellant.

H. ROBERT FOWLER and RICHARD F. TAYLOR, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

This was a suit brought by appellee against appellant, to recover damages on account of the death of Stephen D.

Conkle, which was occasioned by an explosion, occurring while he was working in a mine alleged to have been in the possession of, and operated by appellant. Verdict and judgment in favor of appellee for $3,500.

At the time of the injury, on the night of July 18, 1905, Stephen D. Conkle was in the employ of a mining company, engaged in mining fluor-spar, lead, zinc and other mining products, in a mine in Hardin county, Illinois. He was a young man 21 years of age, in good health, making $1.25 a day and had an aged father and several younger brothers and sisters whom he helped support to some extent. His knowledge of the use and danger of explosives in mining was very slight and was limited to a week's prospecting in the neighborhood and a few days' employment on top at the mine, where he was killed. The products of this mine were found in drifts and were loosened and taken out by drilling holes, several feet deep along the drifts, and charging them with dynamite, which was fired with a cap and fuse. There were two drifts in the mine, one 211 feet down and another 50 feet lower. On that day the day shift of men had been drilling along the 211-foot drift under John Goodwin. The night shift was under direction of Samuel Miles and both he and Goodwin were under control of Mr. Ostrander, the superintendent of the mine. One of the holes drilled by the day shift failed to explode when the attempt was made to touch it off. This hole was about 4 feet deep and loaded with four sticks of dynamite set with cap and fuse and tamped down with loose spar on top. Goodwin set a man to cleaning it out, but after he got down some 15 inches, took him away, putting him at other work and leaving the hole still loaded. The man who started to clean out the hole claims to have left a fuse about 3 inches long hanging out of it as a warning that it was a "missed hole." Deceased was that night for the first time ordered below with the night shift. He first went to the lower level and was then ordered back to the 211-foot level where he and Byron White, a boy 17 years of age, were set to work together by Miles. White testified that Miles directed them

to drill a hole 2½ feet and then to finish the "missed hole," drilling it to a depth of 3½ feet; that Miles ran a spoon handle down in the hole and showed them how deep it was, and that after telling them how deep he wanted it drilled, he gave no further directions about the work. After they had finished the first hole, they commenced, a little before midnight, on the "missed hole," Conkle holding the hand drill and White striking with the sledge hammer. An explosion followed and Conkle was injured so that he died shortly afterward.

Miles testified he did not know of the "missed hole" nor did he remember telling White and Conkle to drill it out. The evidence on the whole clearly showed such mismanagement or carelessness on the part of those in charge of the mine, as to justify the jury in finding for appellee upon the charge of negligence, under proper instructions as to the law.

Appellant criticises nearly all of the instructions, 12 in number, given for appellee. Instruction No. 1 is almost identical with one approved in C., M. & St. P. Ry. Co. v. Dowd, 115 Ill., 659 (660), and what is there said by the court answers the objections made by appellant to said instruction in this case. Appellant complains of a number of the instructions for the reason, as it alleges, they fail to state correctly the measure of damages. It is true that in some of these instructions the language used is not carefully guarded, but as a whole the instructions correctly stated the law governing the measure of damages in such cases, and we do not think the jury could have been misled upon this subject. We are especially inclined to this view from the fact that the damages assessed by the jury do not appear to us, from all the evidence in the case, to have been unreasonable or excessive.

Appellee's instruction No. 9, after stating certain facts necessary for the jury to find to entitle plaintiff to recover, concludes, "And if the jury further believe from the evidence that the said Stephen D. Conkle left a father and six brothers and sisters, as his next of kin, surviving him, as

charged in said declaration, and that said father, brothers and sisters *have been injured in their means of support,* occasioned by the death of the said Stephen D. Conkle, then the plaintiff is entitled to recover." The objection made by appellant to this feature of the instruction is that it states an element of damages, provided for in section 33 of the act in relation to coal mines, instead of that provided for by section 2 of the Injuries Act, under which this suit was brought. Appellant, however, should not be heard to complain for that reason, as the rule laid down in the instruction named, was much more limited than it was entitled to have it stated under the Injuries Act. What is here said disposes of the same objection which is made to certain other instructions. There were other instructions given for appellee, which correctly told the jury that the damages must be based upon the pecuniary injuries, resulting from the death of said Conkle, to his next of kin. The series of instructions given on behalf of appellee fairly stated the law applicable to his case, while some 22 instructions given for appellant appear to have fully covered appellant's theory of the law, applicable to its case.

What we regard as the most serious question arising upon this record, is whether appellant was at the time of the injury in possession of and operating the mine in question, as charged in the declaration. It appears from the evidence that on June 15, 1905, there was in existence a corporation known as the Fairview Fluor-Spar Company, organized under the laws of New York, which was then in possession of and operating said mine, and also appellant company known as the Fairview Fluor-Spar & Lead Company, which had then been recently organized under the laws of this State. These companies had the same president and secretary, but the stockholders were not wholly identical. On the date last named the foreign company made a conveyance in writing, of all of its property, real and personal to appellant, and on the same day appellant conveyed the same in trust to the Union Trust and Savings Bank of East St. Louis, Illinois, to secure the payment of

250 bonds of $1,000 each and the interest thereon. These two instruments were recorded four days later in the office of the recorder of Hardin county, where the mine was located and were thereafter deposited with the trustee. The stock of the foreign corporation was at that time held by the International Finance and Development Company of New York, as security for advances already made and to be thereafter made, and said Finance and Development Company was furnishing the money to take care of the pay roll, run the mine, improve and enlarge the plant, and was collecting the proceeds derived from the sale of its products.

Charles Turner, the vice president and manager of sales of appellant, testified that the principal reason why it was thought advisable to incorporate a new company in Illinois was because of the convenience in raising money upon bonds; that certain bankers in St. Louis, Missouri, and East St. Louis, Illinois, were caused to become interested in the bonds and undertook to take a large portion of them provided the trust agreement and everything was satisfactory; that it became necessary to have the title to the property, upon which the trust deed was given, guaranteed by a title guaranty company which took some time in the examination of the title; that the arrangement with the International Finance and Development Company, which owned or held as collateral security the stock of the foreign company, was that there was to be no passing of the papers or possession of the property until that company had been paid certain sums of money, which they had advanced, and with that in view, an arrangement was made whereby all papers were deposited with the Union Trust & Savings Bank, to be held in escrow; that it was not until the 26th day of July, 1905, that the title was guaranteed; that on the 31st day of July, enough sales of bonds had been made to satisfy the Development Company and, with their consent, on that day the deeds were delivered and the property passed to appellant. It also appeared that on the same day the insurance policy on the property, which had been issued to the foreign company on March 3, 1905, received the following indorse-

ment: "This policy is made to read Fairview Fluor-Spar &
Lead Company, dated July 31, 1905, John H. Farrel,
Agent."

Mulholland, the president of both companies, and Fogarty,
the auditor of the Development Company, testified to a por-
tion of the same facts stated by Mr. Turner. Another wit-
ness testified that he was in the employ of the foreign com-
pany to the 31st day of July, 1905, and that he had some-
thing to do with transferring the insurance policy from one
company to the other. On the other hand, witnesses Conkle,
White and Hawkins testified to facts tending to show that
appellant was operating the mine at the time of the injury.
While appellant contends that the testimony of its witnesses
above referred to proved that the deed was not delivered and
the transfer made to it from the foreign company, until
July 31st, yet as a matter of fact the deed was made on
June 15th and the deed of trust executed by appellant on
the same day, and both recorded four days later. Appel-
lant, or the trust company for it, proceeded at once to sell
the bonds issued and signed by it and secured by the deed
of trust, executed by appellant, on the property in question.
A large portion of these bonds were disposed of before July
31st and appellant got the benefit of the money. These
transactions were all based upon the theory adopted and held
out by appellant to the world, that it had become the owner of
the property. It is true the deed of conveyance and the
trust deed were held by the Union Trust and Savings Bank,
but that appears to have been done for the benefit of the
Improvement Company, and the right of that company to
take the products of the mine until it should be paid its
claims was conceded by all parties concerned.

The situation at the time of the injury to Conkle as dis-
closed by the record, appears to be about as follows: It had
been determined to abandon the old corporation and a new
one had been incorporated in Illinois, for the sole purpose
of convenience in securing money by the issuance of bonds
or otherwise to carry on the work of the mine and money
was being obtained in that manner. The title to the prop-

erty had been conveyed by the foreign company to appellant and the latter was selling bonds through its agent, the trust company, upon the strength of the ownership of such title. The Improvement Company was at that time, as it had been before, really operating the mine so far as its material financial affairs were concerned, in that it was furnishing the money and receiving the proceeds. The men who had charge of the physical operation of the mine were in fact the same persons who conducted the operations for the foreign company and the president and secretary of the two companies were the same.

Upon the question whether the old name or the new one was used in conducting the business of the mine, there was, to some slight extent, a contrariety of evidence. Under such circumstances, it was a question of fact for the jury to determine which of the two companies was in possession of and operating the mine as charged by the declaration, the foreign company, which had apparently no further financial interest in the mines or the new company, which had assumed and was providing for the financial burdens of the same. Upon that question the effect of the verdict of the jury was to sustain the charge of the declaration that appellant was in possession of and operating the mine, and with that finding we are content.

The judgment of the court below will be affirmed.

*Affirmed.*